Argued October 20, reversed and decree entered December 14, 1920.

## JOHNSTON *v.* APPLE.

(193 Pac. 1024.)

**Appeal and Error—Finding of Lower Court Entitled to Weight, Though Case is Tried De Novo.**

1. A proceeding on a verified claim against the estate of a deceased, being an equitable one, is under the statute tried *de novo* in the Supreme Court, as well as the Circuit Court on the record made in the County Court, but the fact finding of the county judge, is entitled to some weight, as he heard the witnesses.

On presumption of ownership of note arising from possession, see note in 17 L. R. A. 326.

Bills and Notes—Presumption of Ownership from Possession.

2.   The possession of a note by the holder and original payee after the death of the maker raises the statutory presumption of ownership declared by Section 799, subdivision 11, Or. L.

Executors and Administrators—Evidence of Payment Insufficient to Rebut a Presumption of Ownership from Possession.

3.   In a proceeding against the estate of a deceased, based on a note in the possession of claimant at the time of the death of the maker, and of which he was the original payee, evidence of payment *held* wholly insufficient to rebut the statutory presumption of ownership, so that the denial of the claim was improper.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

The appellant, N. M. Apple, was a real estate broker in the City of Portland. Chas. M. and Eunice E. Hollopeter were the owners of certain lands in Yamhill County, this state, which they exchanged for other lands in Tillamook County through the agency of Apple, whom they employed to represent them. In consideration of his services, and on February 11, 1913, they executed to him their certain joint and several promissory note for $500, payable two years after date, with interest thereon at the rate of 8 per cent per annum, payable semi-annually. On December 15, 1913, a payment of $20 was made, for interest to August 11, 1913. On March 14, 1914, another $20 payment was made, for interest to February 11, 1914, and on August 8, 1914, another $20 payment was made, for interest to August 11, 1914. Such payments are indorsed on the back of the note, and there is no evidence on its face that any other payments were ever made on the note. It appears that at the time of the exchange there was a mortgage on the Tillamook lands for $3,736, executed October 15, 1910, and that to secure the payment of his note Apple took a second mortgage upon those lands; that a suit

was brought in the Circuit Court of Tillamook County to foreclose the first mortgage, to which he was made a party; that a decree was rendered, foreclosing the mortgage and directing a sale of the property, and that the proceeds of such sale be applied to the amount of the first mortgage. Execution was issued. The property was sold under the decree, and was bid in for its amount; therefore nothing was realized by Apple upon his second mortgage to secure his note. About December 11, 1913, Apple assigned and delivered his note to the Northwestern National Bank of Portland, where it remained until January 6, 1916, during which time the above interest payments were made to the bank and credited upon the note. At its maturity, on February 11, 1915, it was formally presented to each of the Hollopeters for payment by a notary public in the employ of that bank. Chas. M. Hollopeter was a physician, and died December 30, 1915. He left no property, and there never was any administration of his estate. The principal assets of his widow consisted of a life insurance policy in her favor, in the sum of $2,000. Eunice E. Hollopeter, widow of Dr. Hollopeter, died August 3, 1916. No relative having applied for letters upon her estate within the statutory time, Apple, claiming to be a creditor of the estate, filed a petition in the County Court of Multnomah County to be appointed as administrator of her estate, and by an order of the court was appointed and duly qualified, and ever since has been such administrator. On February 28, 1917, Apple filed in the County Court his verified claim against her estate for the amount of his promissory note and accrued interest, together with certain other claims which are not material to this opinion. A copy of the note and of a collateral agreement was

set out in the petition and made a part of it. In response to service of notice, Grace Johnston, one of the daughters of the deceased, who appeared on behalf of all the heirs and objected to the allowance of the claim, or any part thereof, for answer said:

"Petitioner admits that a promissory note of tenor and form described in paragraph I of said claim was executed by the said Eunice E. Hollopeter with Charles M. Hollopeter, but as to whether or not interest was paid to August 11, 1914, or until any other day or date, or as to how much or what interest was paid, your petitioner has no knowledge, or information or belief, but alleges on information and belief that the said note has been fully paid and discharged, and the said Eunice E. Hollopeter and her said estate relieved and released of all and every liability for or on account of said note or interest thereon, or any part thereof."

Testimony was taken under the issue, and a hearing was had before the county judge, who rendered a decree that the full amount of Apple's claim, based upon the note for $500, with accrued interest, should be allowed and paid. From this decision, the heirs appealed to the Circuit Court, and after trial there that court rendered a decree that Apple's claim, based upon his note, should be disallowed, from which he appeals to this court.

REVERSED.   DECREE RENDERED.

For appellant there was a brief over the names of *Mr. P. J. Bannon* and *Mr. J. N. Haddock,* with an oral argument by *Mr. Bannon.*

For respondents there was a brief over the name of *Messrs. Cake & Cake,* with an oral argument by *Mr. W. M. Cake.*

JOHNS, J.—1–3. This is an equitable proceeding, which, under the statute, is tried *de novo* here, and in the Circuit Court upon the record made in the County Court. The execution of the note being admitted, the only question presented is one of payment, and the burden of proof is upon the heirs of the deceased. The testimony is conclusive that soon after its execution the note was assigned by Apple as collateral to the Northwestern National Bank, where it remained until the 6th of January, 1916, during which time the three interest payments were made by C. M. Hollopeter. On that date the bank delivered the note to Apple, who has had actual possession of it ever since. Attorney Bannon testified that Apple exhibited the note to him at the time he prepared his petition to be appointed administrator of the estate of Eunice E. Hollopeter, which was soon after her death in August, 1916. That would entitle him to the statutory presumption under Section 799, Or. L., "that things in the possession of a person are owned by him," that is to say, the law presumes that Apple was then the owner and holder of the note. After hearing the testimony in open court, the county judge found that the claim should be allowed. He saw and heard the witnesses testify, and in this kind of a case his finding is entitled to some weight. The Circuit Court found, as a fact, that "after the death of C. M. Hollopeter, said note was not paid by Eunice E. Hollopeter, deceased," and there is no evidence that she ever paid the note, or ever claimed to have paid it. If the note was ever paid, it was paid by C. M. Hollopeter. The testimony is conclusive that soon after the execution of the note it was assigned, as collateral, to the bank, where it remained until

January 6, 1916. It appears that Dr. Hollopeter died December 30, 1915. Claudia A., the daughter-in-law of Dr. and Eunice E. Hollopeter, testified:

"Q. Do you not know that for mere than a year prior to his death, Dr. Hollopeter received no money from any source; that he was not able to pay his taxes or his interest, and that he was absolutely without funds of any kind?

"A. Yes. He was sick, and his sons took care of him. He had lost all through his trades."

The daughter, Mrs. Cadle, testified that he had softening of the brain and was in bed eight months prior to his death; that for the previous three or four months he was suffering from a stroke of paralysis.

"Q. What was the condition of your father's health for the year or two years prior to his death?

"A. Well, I would say for three years before papa's death he was not himself at all. He died from softening of the brain, and had been taken away from his work about three years before, I would say. He was not capable of attending to his business at all.

"Q. He was not doing any business during the entire year of 1915?

"A. No, sir.

"Q. Did he make any payments on this note during the year of 1915?

"A. No, I know nothing about it.

"Q. If any payments were made on the note it must have been made before that?

"A. Yes; he couldn't have made any during that time."

It is true that there is testimony of the daughter and the nurse, tending to show that the mother had said the note was paid; but there is no evidence that she ever claimed to have paid it, or as to when, how, or by whom it was paid. After the doctor's sickness the Hollopeters were in straightened circumstances,

and never had the money to pay the note, and the only assets of either of them were the $2,000, life insurance, which was collected by the widow after his death. The bank records show that both of them were notified at the maturity of the note on February 11, 1915, and that it was then protested for nonpayment. There is no evidence of any claim that the note was then paid, or of any protest or objection by either of the Hollopeters, to the receipt of that notice. Dr. Hollopeter knew that the note was in the bank. It was there he made his interest payments, and the testimony is conclusive that the note remained in the bank until some time after his death.

When analyzed, the evidence of the payment of the note is founded upon inference and suspicions, largely growing out of the actions and conduct of Apple and the manner in which he testified, all of which, standing alone, might be construed as sufficient evidence of payment. But the stubborn fact remains that soon after its execution the note was deposited in the bank as collateral, where it remained until the 6th of January, 1916; that C. M. Hollopeter died in December, 1915; that he made the three interest payments to the bank, which are credited upon the note; that its records show, and its officers testify, that he never made any other payment to the bank, and that at its maturity, on February 11, 1915, the note was duly protested for nonpayment. If either of the Hollopeters had paid the note to the bank prior to January 6, 1916, they would then have been entitled to its possession, and in the ordinary course of business the bank would have delivered it to them. The Hollopeters knew that the bank held the note as collateral. During that period, any payment should have been made to the bank. Having such knowledge, the tes-

timony as to the payment direct to Apple should be clear and convincing. There is no evidence that anyone ever claimed to have paid the note to him, or as to when it was paid, or how it was paid. The decree of the Circuit Court will be reversed, and one entered here against the estate of Eunice E. Hollopeter in favor of Apple, for the full amount of his note, with accrued interest, without costs to either party in this court, or the County or the Circuit Court.

REVERSED.    DECREE RENDERED.

McBRIDE, C. J., and HARRIS and BURNETT, JJ., concur.